**BROWN–FORMAN DISTILLERS CORPORATION, Petitioner,**

v.

**UNITED STATES TREASURY DEPART-MENT, Bureau of Alcohol, Tobacco and Firearms, Central Region, Respondent.**

No. 77–3033.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1978.

Decided Jan. 16, 1979.

---

5.   I concur in the majority's disposition of the mother's claim for loss of services.

Wesley P. Adams, Jr., Ogden, Robertson & Marshall, John S. Moremen, Louisville, Ky., for petitioner.

Gen. Counsel, Dept. of the Treasury Bureau of Alcohol, Tobacco and Firearms, Washington, D. C., Harry H. Ellis, Dale L. Cayot, Regional Counsel, Bureau of Alcohol, Tobacco and Firearms, Cincinnati, Ohio, Carl D. Lawson, Susan J. Atkinson, Robert B. Nicholson, Dept. of Justice, Washington, D. C., for respondent.

Before CELEBREZZE, LIVELY and KEITH, Circuit Judges.

PER CURIAM.

Brown-Forman Distillers Corporation petitions this court for review of an order of the Secretary of the Treasury, by an administrative law judge of the Bureau of Alcohol, Tobacco and Firearms (BATF). The administrative law judge found that Brown-Forman had violated Section 5(c) of the Federal Alcohol Administration Act, 27 U.S.C. § 205(c).[1] The penalty imposed was a suspension for eight days of Brown-Forman's basic permits to distill and import wines and distilled spirits.

The record discloses that Brown-Forman gave to its only distributor in South Carolina a television and a stereo set to be awarded to the two salesmen of the distributor who achieved the greatest increase in sales of a Brown-Forman brand known as "Canadian Mist" during a two-month period in 1974. The combined value of the two gift items was approximately $600. They were not purchased by Brown-Forman for this purpose, but were received as a gift from a publication in which it advertised. At the same time Brown-Forman was offering Canadian Mist to this distributor at a discount of 17% below the regular price (reduced from $48 to $40 per case).[2] During the two-month period purchases of Canadian Mist by the South Carolina distributor increased significantly over the same two-month period in the previous year. However, for the entire year 1974 purchases of Canadian Mist by the distributor totaled 41,000 fewer gallons than in 1973. The purchases of other competing Canadian whiskeys by the distributor during the two-month period decreased though purchases of one competing brand, Canadian Club, were up 30,000 gallons from 1973 to 1974.

The administrative law judge found that three factors had contributed to the increased purchases of Canadian Mist by the South Carolina distributor during the two-month period. These were the price discount, a "profit drive"[3] toward the end of the Brown-Forman fiscal year and the offering of two prizes to salesmen of the distributor, characterized by the administrative law judge as a "sales contest." Though Brown-Forman argues that in the entire setting the prize offering was an

---

1. **§ 205. Unfair competition and unlawful practices**

    It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer or wholesaler, of distilled spirits, wine, or malt beverages, or as a bottler, or warehouseman and bottler, of distilled spirits, directly or indirectly or through an affiliate:

    **(c) Commercial bribery.** To induce through any of the following means, any trade buyer engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such inducement is made in the course of interstate or foreign commerce, or if such person engages in the practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such trade buyer in interstate or foreign commerce: (1) By commercial bribery; or (2) by offering or giving any bonus, premium, or compensation to any officer, or employee, or representative of the trade buyer; or . . .

2. The legality of the discount was not questioned. It was offered to all customers during this period.

3. There was testimony that large customers often cooperate with their suppliers by making heavy purchases near the end of a supplier's fiscal year to help make a good profit statement for the year.

insignificant factor in its increased sales to the South Carolina distributor, the findings of fact are not clearly erroneous. Indeed, the underlying facts were admitted by Brown-Forman and there was never any attempt to conceal the fact that the two prizes were offered.

Among the conclusions of law entered by the administrative law judge were the following:

3. The respondent induced the trade buyer engaged in the sale of Canadian Mist distilled spirits to purchase Canadian Mist distilled spirits from the respondent to the exclusion in part of distilled spirits offered for sale by other persons in interstate and foreign commerce.

4. The respondent engaged in the practice of using such means to such an extent as substantially to restrain and prevent transactions in interstate and foreign commerce in distilled spirits.

5. The direct effect of the inducement in the form of prizes to salesmen-employees of the trade buyer was to prevent, deter, hinder and restrict, in part, other persons from selling distilled spirits to the same trade buyer and certain other South Carolina trade buyers in interstate and foreign commerce.

6. The inducement and the results thereof were accomplished by offering and giving premiums and compensation to officers, employees, and representatives of the trade buyer.

7. The respondent has willfully violated the conditions of its basic permits under the Federal Alcohol Administration Act as outlined in the order to show cause, and accordingly, the basic permits of the respondent are subject to suspension.

■ Though it strains logic to conclude that the offering of two inexpensive prizes to individual salesmen of the distributor was a significant factor in the increased purchases during March and April 1974 in view of the fact that the distributor was able to purchase Canadian Mist at a 17% discount during the same period, it cannot be said that conclusion of law number 5 is totally without rational basis. However, we find no basis for conclusion number 7 which holds that Brown-Forman "willfully violated the conditions of its basic permits . . . ." The finding of willfulness was based on the fact that Brown-Forman had been in the distilling business for a long time and that it was familiar with a 1970 "industry circular" (No. 70–24) which had been distributed by BATF.

The 1970 circular was issued for the purpose of reminding industry members of the applicability of Section 5(c) of the Act to "[the] offering or giving [of] any bonus, premium, or compensation" to officers or employees of wholesalers. Under the heading "background" the circular stated that the attention of BATF had been directed to a proliferation of sales promotion contests where "substantial prizes" were awarded to sales managers of wholesale dealers for exceeding quotas established by their suppliers. After summarizing the provisions of Section 5(c) the circular concludes with the following language:

*Conclusion:* The offering or giving of prizes, *such as* trips abroad, to sales managers of wholesale liquor dealers, or the offering or giving of money to managers or sales employees of wholesalers or retailers, would fall equally within the coverage of the Act and might subject the producer, importer or wholesaler, making such offer or gift, to liability under the Act, including the possible revocation or suspension of applicable basic permits.

It is suggested that all sales promotion programs be reviewed to make certain that such programs do not fall within the coverage of the statute cited above.

■ After careful study of the record and consideration of the briefs and oral arguments of counsel this court concludes that there is no basis for the conclusion that Brown-Forman willfully violated Section 5(c) of the Act. Circular 70–24 clearly warns of the possible consequences of "substantial prizes to sales managers . . . *such as* trips abroad." This circular does not make it clear that offering relatively inexpensive prizes to individual sales em-

378

ployees would be considered in the same class as substantial gifts to sales managers. If the circular was intended to warn that the widespread practice of offering relatively small inducements to individual employees of customers was what concerned BATF, the circular could easily have referred to such practices. Instead, it specified only substantial gifts to sales managers. It was unreasonable for the administrative law judge to base a finding of willful violation on this evidence. Though criminal intent to commit an act known to be wrong is not required to find willfulness in a civil case, nevertheless some element of culpability must be established. *Aero Mayflower Transit Co. v. I. C. C.*, 535 F.2d 997 (7th Cir. 1976). There was no showing of willfulness sufficient to justify refusal to direct a verdict on the issue if this had been a jury trial. Cf. *Capitol Wine & Spirit Corp. v. Berkshire*, 150 F.2d 619, 620 (2d Cir.), *cert. denied*, 327 U.S. 783, 66 S.Ct. 681, 90 L.Ed. 1010 (1945). A basic permit may be suspended only for willful violations of the Act. 27 U.S.C. § 204(e)(1). Therefore the suspension ordered in this case is vacated and the order of the Secretary of the Treasury is set aside.